IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRINIA
CLARKSBURG DIVISION

KRISTINA SYPOLT,
on behalf of herself and all others
similarly situated,

and,

GREGORY SYPOLT,
on behalf of himself and all others
similarly situated,

          Plaintiffs,

v.

MYLAN PHARMACEUTICALS INC.,
A West Virginia Corporation,

VIATRIS INC., A Foreign Corporation,

PFIZER INC., A Foreign Corporation,

UNITED STEEL, PAPER AND FORESTRY,
RUBBER, MANUFACTURING, ENERGY, ALLIED
INDUSTRIAL AND SERVICE WORKERS
INTERNATIONAL UNION, A Union
Not Registered in the State of West
Virginia,

and LOCAL UNION 8-957,

Defendants.

> ELECTRONICALLY
> FILED
> Aug 02 2021
> U.S. DISTRICT COURT
> Northern District of WV

1:21-cv-108

Civil Action: 21-C____
Judge: Irene M. Keeley

**CLASS ACTION COMPLAINT / REQUEST FOR PREMININARY INJUNCTION**

1

1. Plaintiff Kristina Sypolt (hereinafter "KS" or "2018 Members"), on behalf of herself and all others similarly situated, brings this class action complaint pursuant to FRCP 23 against Defendants named herein.

2. Plaintiff Gregory Sypolt (hereinafter "GS" or "2021 Members"), on behalf of himself and all others similarly situated, brings this class action complaint pursuant to FRCP 23 against Defendants named herein.

3. Both KS and GS are residents of the State of West Virginia, County of Marion, City of Fairmont. Both KS and GS are members of Local Union 8-959 ("Local Union" hereinafter). Both KS and GS are, by membership of Local Union, likewise members of United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union ("International Union" hereinafter). Both GS and KS were employed at Mylan Pharmaceuticals Inc. ("Mylan" hereinafter). Both GS and KS are harmed by Viatris Inc. ("Viatris" hereinafter) and Pfizer Inc. ("Pfizer" hereinafter). "All similarly situated individuals" are Members of Local Union/International Union, work at Mylan in Morgantown, West Virginia and have been sent a "Waiver". See, Bates Stamped Exhibit at 00001-00003, and 00004-00007 (attached herein as Ex. 1).

4. This action maintains jurisdiction in this court as the National Labor Relations Act preempts claims in the Circuit Court of the State of West Virginia.

5. 2018 Members are defined as the class or "sub-class" who are members of the Local Union/International Union, worked at Mylan in Morgantown,

      West Virginia, that were part of the 2018 layoffs, or partial plant closure, or were otherwise no longer working at the Morgantown location, and have received a "Waiver and Release of Claims" from Mylan setting their termination date on August 1, 2021. Like KS.

6. 2021 Members are defined as the class or "sub-class" who are members of the Local Union/International Union, worked at Mylan in Morgantown, West Virginia, that were part of the 2021 layoffs, or partial plant closure, or were otherwise no longer working at the Morgantown location, and have received a "Waiver and Release of Claims" from Mylan setting their termination date on July 31, 2021. Like GS.

7. This class will include all members of Local Union/International Union who were provided the "Waiver and Release of Claims" ("Waiver" hereinafter). Both 2018 Members and 2021 Members.

8. Yet, this action **is NOT intended to deprive any person, potential class member, or any other party from entering into the Waiver should such person so choose. Specifically, this action is NOT intended to deprive any potential member of this class from collecting compensation due under the terms of the Waiver. Should any person choose to agree to the terms of the Waiver, this action is not intended to prevent said person from receiving compensation agreed upon under the terms of the Waiver. This action shall not be construed to delay any person's compensation under the terms of**

**the Waiver shall said person (potential 'class' member) so choose to enter into the Waiver with Mylan.**

9. Defendant Mylan is a pharmaceuticals company organized in the State of West Virginia.

10. Defendant Viatris is a pharmaceuticals company not registered in the State of West Virginia.

11. Defendant Pfizer is a pharmaceuticals company that is registered in the State of West Virginia but organized in a foreign state.

12. Local Union does not appear to be registered in the State of West Virginia but is located in Morgantown, West Virginia.

13. International Union is a union that does not appear to be registered in the State of West Virginia but is located in Pittsburgh, Pennsylvania.

14. Wherefore, Jurisdiction is proper herein.

## **COUNT I – PRELIMINARY INJUCTION**

15. Members 2018 and Members 2021 incorporate by reference herein all proceeding paragraphs set forth in this action.

16. Fed. R. Civ. P. 65 states:

> (a) Preliminary Injunction.
> (1) *Notice*. The court may issue a preliminary injunction only on notice to the adverse party.
> (2) *Consolidating the Hearing with the Trial on the Merits*. Before or after beginning the hearing on a motion for a preliminary injunction, the court may advance the trial on the merits and consolidate it with the hearing. Even when consolidation is not ordered, evidence that is received on the motion and that would be admissible at trial becomes part of the trial record and need not be repeated at trial. But the court must preserve any party's right to a jury trial.

17. In proper labor relations cases federal court will not hesitate to issue preliminary and permanent injunctions and will not hesitate to employ powers of judiciary in enforcement thereof. Consol. Coal Co. v. United Mine Workers of Am., Loc. Union No. 6869, 362 F. Supp. 1073 (S.D.W. Va. 1973)

18. In Paragraph A of both Waivers, Mylan forces 2018 Members (Bates No. 00001), and 2021 Members (Bates No. 00004) to waive "seniority rights".

19. I.R.S. Tech. Adv. Mem. 6303076060A (Mar. 7, 1963) provides that "that employees laid off by reason of the permanent shutdown of a mine, who are not entitled to a pension, and who do not accept severance pay,

5

are entitled to preferential employment within the bargaining unit at any other mine in the same district."

20. Thus, both 2018 Members and 2021 members, by executing the Wavier as drafted (Ex. 1, Bates 00001 and 00004 at Paragraph A), would be waiving their preferential employment rights. This is not addressed in the Waiver and will cause irreparable harm in the waiving of seniority to nearly 1,500 employees.

21. Recently The Honorable Joe Manchin, III, United States Senator authored a correspondence concerning Mylan's shutdown in Morgantown, WV. Senator Manchin, III specifically calls for "an expedited review of the facility for designation as critical infrastructure and its employees as essential workers as well as an explanation of the existing authority the Cybersecurity and Infrastructure Security Agency (CISA) has in this matter." See, Ex. 2 (July 27, 2021, letter, Senator Machin, III, attached herein).

22. Senator Manchin, III states that closure of this particular plant results in "our country being less able to respond to the evolving challenges presented by a global pandemic like COVID-19." Id.

23. Senator Manchin, III addresses this plant as a "world-class" facility that has been in operation for over 50 years. Id.

24. Thus, it is highly likely that there will be other manufacturing jobs available at this plant and future jobs.

25. Should 2018 Members and 2021 Members waive seniority they will not be entitled to preferential treatment in future jobs causing them irreparable harm. There is no indication that said members will not be harmed by waiving something as detrimental as seniority.

26. Thus, 2018 and 2021 Members request injunctive relief from permitting Defendants from allowing nearly 1,500 members from voiding their earned seniority and/or striking the words "My seniority rights" from Paragraph A of the waivers. Ex. 1, at Bates 00001 and 00004.

## COUNT 2 – TORTIOUS INTERFERENCE

27. Members 2018 and Members 2021 incorporate by reference herein all proceeding paragraphs set forth in this action.

28. Mylan entered into a valid contract with Local Union and International Union ("The Agreement" hereinafter). See, Bates Number 00009-93.

29. On Monday, November 16, 2020, the following was announced:

> NEW YORK--(BUSINESS WIRE)-- Pfizer Inc. (NYSE: PFE) announced today that it has completed the transaction to spin off its Upjohn Business and combine it with Mylan N.V. to form Viatris Inc.
>
> Pfizer Chairman and Chief Executive Officer Dr. Albert Bourla said, "We are proud to have completed the combination of Upjohn and Mylan to create Viatris and **pleased to have delivered value to our shareholders through this transaction**. I want to express my gratitude to our Upjohn colleagues for their dedication in helping us achieve this milestone. Looking ahead at the new Pfizer, we believe our pipeline has never been stronger, and we are energized and inspired to continue developing breakthrough treatments and delivering innovative, life-changing medicines to patients around the world."

7

> Under the terms of the transaction, which was structured as an all-stock Reverse Morris Trust, Upjohn Inc. was spun off to Pfizer stockholders by way of a *pro rata* distribution and immediately thereafter combined with Mylan. The combined company was renamed "Viatris" in connection with the closing. In the distribution, Pfizer stockholders received approximately 0.124079 shares of Viatris common stock for every one share of Pfizer common stock held as of the close of business on the record date (which was November 13, 2020). In addition to the Viatris shares received in the distribution, Pfizer stockholders retained as of the closing the same number of shares of Pfizer common stock as they held immediately prior to the transaction. As of the closing of the combination, Pfizer stockholders owned approximately 57% of the outstanding shares of Viatris common stock, and Mylan shareholders owned approximately 43% of the outstanding shares of Viatris common stock, in each case on a fully diluted, as-converted and as-exercised basis.

(emphasis added) https://www.pfizer.com/news/press-release/press-release-detail/pfizer-completes-transaction-combine-its-upjohn-business

30. This was a move by Pfizer to return shareholder profit.

31. Pfizer knew of the exitance of an employment contract between Mylan, Local Union, and International Union. Bates No.: 00009-93.

32. The Agreement was for the benefit of 2018 and 2021 Members as set forth herein. Thus, 2018 and 2021 Members are the sole intended beneficiaries of the Agreement.

33. The Agreement was for a set period of time; namely, April 22, 2017 – March 1, 2023. Id. at 00009.

34. The Agreement was in place when Pfizer knowingly interfered.

35. There is existence of a contractual or business relationship or expectancy per The Agreement that is in place until March 1, 2023. In fact, both 2018 Members and 2021 Members were deprived of benefits and pay during

8

the existence of The Agreement. Yet Pfizer committed an intentional act of interference as a party outside The Agreement or expectancy. Pfizer's interference caused the harm sustained, and 2018 and 2021 Members have suffered damages of lost wages and benefits.

36. But for Pfizer's tortious interference neither 2018 Members, nor 2021 Members would have been harmed. Both 2018 Members and 2021 Members have suffered harm due to Pfizer's tortious interference with the Agreement and have damages.

## CLASS REPRESENTATION ALLEGATIONS AND COUNT 3 – UNFAIR LABOR PRACTIVE VIOLATION/BREACH OF DUTY OF GOOD FAITH AND FAIR DEALING

37. Members 2018 and Members 2021 incorporate by reference herein all proceeding paragraphs set forth in this action.

38. Pursuant FRCP 23 2018 Members and 2021 Members bring these claims (all proceeding claims, and claims identified hereinafter) on behalf of all persons identified in Paragraphs 5-7 of this Action. *Supra*.

39. 2018 Members and 2021 Members allege, upon information and belief, that the number of class members is so numerous that joinder of all of them is impractical – specifically there are well over 1,000 members affected.

40. The members of this Class will be easily ascertained from the records of the Defendants when discovery commences herein. It will be easy to ascertain who is a 2018 Member and who is a 2021 Member.

41. Class Representatives' claims raise questions of law and fact that are common to claims of each member of the Class. Both 2018 Members and 2021 Members received Waivers deeming their seniority invalid (Count 1) and have had their pay/benefits terminated (Count 2). And, likewise have the same grounds for relief in Couth 3, herein.

42. The claims of the Class Representatives are typical of the claims of each member of the Class.

43. The common issues involved in this lawsuit predominate over any separate issues that may exist among individual plaintiffs.

44. The Class Representatives are Mylan employees who will fairly and adequately protect and represent the interest of each member of the Class. Additionally, the Class Representatives are fully cognizant of his/her responsibilities as Class Representatives, and has retained experienced counsel fully capable of, and intent upon, vigorously pursuing this action.

45. The question of law of fact common to Class Representatives' claims and the claims of each member of the Class predominate over any question of law or fact affecting only individual members of the Class. Additionally, the amount in controversy for each Class member's claims would make individual lawsuits economically unfeasible, if not impossible. Class Representation is therefore clearly superior to other available methods for the fair and efficient adjudication of this controversy.

46. "It shall be an unfair labor practice for an employer - to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 157 of this title." 29 U.S.C.A. § 158(a).  Mylan by agreeing to the transaction to combine its business with The Upjohn Company under the direction of Pfizer likewise violated 29 U.S.C.A. § 158(a) by interfering with a valid employment contract.

47. 29 U.S.C.A. § 185 (b) titled "Responsibility for acts of agent; entity for purposes of suit; enforcement of money judgments" states:

> Any labor organization which represents employees in an industry affecting commerce as defined in this chapter and any employer whose activities affect commerce as defined in this chapter shall be bound by the acts of its agents. Any such labor organization may sue or be sued as an entity and in behalf of the employees whom it represents in the courts of the United States. Any money judgment against a labor organization in a district court of the United States shall be enforceable only against the organization as an entity and against its assets, and shall not be enforceable against any individual member or his assets.

48. Local Union and International Union are labor organizations defined by 29 U.S.C.A. § 185 (b).

49. Local Union and International Union owe 2018 Members and 2021 Members a duty of good faith and fair dealing.

50. As the exclusive bargaining representative of 2018 and 2021 Members the Local and International Unions have a statutory duty fairly to represent all of those employees (2018 and 2021 Members) "both in its collective bargaining ... and in its enforcement of the resulting collective bargaining agreement." *Vaca v. Sipes,* 386 U.S. 171, 177, 87 S.Ct. 903, 909–10, 17

       L.Ed.2d 842 (1967). "Under this doctrine, the exclusive agent's statutory authority to represent all members of a designated unit includes a statutory obligation to serve the interests of all members without hostility or discrimination toward any, and to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct." *Ibid.* This duty of fair representation is of major importance, but a breach occurs "only when a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith." *Id.,* at 190, 87 S.Ct., at 916. The courts have in general assumed that mere negligence, even in the enforcement of a collective-bargaining agreement, would not state a claim for breach of the duty of fair representation, and we endorse that view today. United Steelworkers of Am., AFL-CIO-CLC v. Rawson, 495 U.S. 362, 372–73, 110 S. Ct. 1904, 1911, 109 L. Ed. 2d 362 (1990).

51.    2018 and 2021 Members allege that both Local Union and International Union acted arbitrary, or in bad faith in its negotiation with Mylan and/or Pfizer as it failed to negotiate options of resuming or continuing operations, ignored 2018 Members and 2021 Members contacts, and failed to address waiver of seniority in the Waiver. 2018 and 2021 Members have been harmed by the violations alleged herein and have been damaged.

## COUNT 4 – BREACH OF CONTRACT

52. Members 2018 and Members 2021 incorporate by reference herein all proceeding paragraphs set forth in this action.

53. Defendant Mylan entered into The Agreement with Local Union and International Union. See, Ex. 1, Bates Number 00009. The Agreement continued through March 17, 2023. Both 2018 Members and 2021 Members are direct beneficiaries of the contract has set forth herein (The Agreement). The Agreement addresses many benefits to 2018 and 2021 Members including, but not limited to seniority (Bates 000013), medical insurance (Bates 000063) and wages (Bates 000075).

54. Mylan entered into The Agreement with Local Union and International Union with the intended benefit owed exclusive to 2018/2021 Members. The Agreement set pay rates and other benefits to be in place through March 2023. While The Agreement was in place, Mylan knowingly merged with a subsidiary of Pfizer to form a new company, under the control of Pfizer in order to violate the terms of The Agreement at the cost of over 1,500 jobs.

55. West Virginia Code § 55–8–12, which provides:

If a covenant or promise be made for the sole benefit of a person with whom it is not made, or with whom it is made jointly with others, such person may maintain, in his own name, any action thereon which he might maintain in case it had been made with him only, and the consideration had moved from him to the party making such covenant or promise.

56. Herein, as stated, the Agreement executed to ensure pay for work performed until March 2023 for 2018 and 2021 Members.

57. Mylan knowingly violated the terms of the Agreement, when the Agreement was in place, to avoid paying the rates to 2018/2021 Members solely in order to form another corporation, move the operations overseas and pay less in wages than the Agreement provided. Importantly Mylan via its newly named company will continue to production of the exact same products (drugs) that were being produced in Morgantown, West Virginia. No loss of production demand exists. Thus, the decision to close the operation violates The Agreement that was, and still is, in place.

58. As such, Mylan breached a valid Agreement and 2018/2021 Members have been harmed by the breach.

2018/2021 Members reserve the right to add claims for civil conspiracy, other negligence counts, and violations of the National Labor Relations Act. This Action is being filed promptly to request the injunctive relief prior to the employment separation dates set forth in the Waiver.

## JURY TRIAL DEMANDED

Plaintiffs demand a jury trial on all issues set forth in complaint.

**KRISTINA SYPOLT,**
**on behalf of herself and all others**
**similarly situated,**

and,

**GREGORY SYPOLT,**
**on behalf of himself and all others**
**similarly situated,**

By Counsel.

_____
D. Adrian Hoosier, II (WV Bar No. 10013)
HOOSIER LAW FIRM, PLLC
213 Hale St., Suite 100
Charleston, WV 25301
Telephone: (681) 215-0642
Facsimile: (681) 245-6192
Mobile/Digital Line (Default): (304) 767-9482
ADRIAN@HLFWV.COM